No. 25-286

# In the United States Court of Appeals for the Ninth Circuit

INSINKERATOR, LLC,

*Plaintiff–Appellee,*

*v.*

JONECA COMPANY LLC; THE JONECA CORPORATION,

*Defendants–Appellants*

Appeal from the U.S. District Court for the Central District of California, Case No. 8:24-cv-02600, Hon. James V. Selna

## APPELLEE INSINKERATOR, LLC'S OPPOSITION TO APPELLANTS' EMERGENCY MOTION TO STAY

Christopher A. Cole
Michael R. Justus
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW, Ste. 800
Washington, DC 20006-3404
Tel.: (202) 625-3500
Fax: (202) 298-7570
chris.cole@katten.com
michael.justus@katten.com
timothy.gray@katten.com

David Halberstadter
Asena Baran
KATTEN MUCHIN ROSENMAN LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-3012
Tel.: (310) 788-4400
Fax: (310) 788-4471
david.halberstadter@katten.com
asena.baran@katten.com

*Counsel for Appellee InSinkErator, LLC*
*(Additional counsel listed in signature blocks)*

January 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form34instructions.pdf

**9th Cir. Case Number(s)**  25-286

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

InSinkErator LLC

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
   ⦿ Yes      ◯ No

   If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

   InSinkErator LLC is a single-member LLC whose sole member is Whirlpool Corporation, a publicly traded Delaware corporation.

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
   ⦿ Yes      ◯ No

---

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."

[2] To the extent it can be obtained through due diligence.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                    *1*                    *New 12/01/24*

i

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

> InSinkErator LLC is a single-member LLC whose sole member is Whirlpool Corporation, a publicly traded Delaware corporation.

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ○ Yes    ⦿ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

I certify that *(select only one)*:

⦿  this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○  the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○  I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** | /s/ Timothy H. Gray | **Date** | 1/21/25

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 34**                                    *2*                              *New 12/01/24*
ii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION ............................................................................ 1

STANDARD OF REVIEW ..................................................................... 3

ARGUMENT ............................................................................... 5

I.  Joneca's Asserted "Irreparable Harm" Cannot Justify a Stay....................... 5

II. Joneca Will Fail on the Merits to Show an Abuse of Discretion. ................. 7

    A.  Joneca Misstates the Law and Cannot Show "Likelihood of
        Success" or "Raise Questions" Based on Incorrect Standards. ......... 8

    B.  Joneca's Falsity Arguments are Quarrels with Factual Findings
        for Which it Cannot Prove "Clear Error."......................... 11

        1.  ISE's Evidence Persuaded the Court; Joneca's Did Not. ....... 11

        2.  There is no Likelihood or "Serious Question" that UL
            430 Provides a *Reasonable* Alternative Meaning.................. 13

    C.  Joneca Shows no Likely Error in the Finding of Materiality............ 16

    D.  Joneca Shows no Likely Error in the Finding of Irreparable
        Harm ........................................................... 18

III. The Remaining Factors Favor ISE, and the Stay Should be Denied........... 20

CONCLUSION ............................................................................. 20

CERTIFICATE OF COMPLIANCE ............................................................. 22

INDEX OF EXHIBITS ..................................................................... 23

CERTIFICATE OF SERVICE ................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

*Al Otro Lado v. Wolf*,
  952 F.3d 999 (9th Cir. 2020) ......................................................4, 5, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................12

*Bracco v. Lackner,*
  462 F. Supp. 436 (N.D. Cal. 1978) .........................................7, 15, 17

*Clorox Co. Puerto Rico v. Proctor & Gamble Co.*,
  228 F.3d 24 (1st Cir. 2000).........................................................13

*Ctr. for Food Safety v. Vilsack*,
  636 F.3d 1166 (9th Cir. 2011) ...................................................19

*Doe v. Horne*,
  115 F.4th 1083 (9th Cir. 2024) ..............................................1, 8, 11

*Edmiston v. Jordan*,
  1999 WL 1072492 (S.D.N.Y. Nov. 24, 1999)................................11

*Fed. Trade Comm'n v. Consumer Def., LLC*,
  926 F.3d 1208 (9th Cir. 2019) .....................................................7

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) .....................................................7

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
  774 F.3d 192 (3d Cir. 2014) .......................................................9

*Hansen Beverage Co. v. Vital Pharm., Inc.,*
  2008 WL 5427601 (S.D. Cal. Dec. 30, 2008) ................................9

*Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.,*
  736 F.3d 1239 (9th Cir. 2013) ...................................................19

*Index Newspapers LLC v. U.S. Marshals Serv.*,
  977 F.3d 817 (9th Cir. 2020) ......................................................8

iv

*Johnson v. Couturier*,
　572 F.3d 1067 (9th Cir. 2009) ........................................................15

*Kos Pharms., Inc. v. Andrx Corp.*,
　369 F.3d 700 (3d Cir. 2004) ...........................................................20

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
　2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ...................................13

*Leiva-Perez v. Holder*,
　640 F.3d 962 (9th Cir. 2011) ........................................................4, 8

*M.R. v. Dreyfus*,
　697 F.3d 706 (9th Cir. 2012) ...........................................................7

*Manrique v. Kolc*,
　65 F.4th 1037 (9th Cir. 2023) ...........................................................4

*Nken v. Holder*,
　556 U.S. 418 (2009)...........................................................................4

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
　Consumer Pharm. Co.*,
　290 F.3d 578 (3d Cir. 2002) .........................................................8, 9

*OpenAI, Inc. v. Open A.I., Inc.*,
　2024 WL 4763687 (9th Cir. Nov. 13, 2024) .....................................9

*POM Wonderful LLC v. Purely Juice, Inc.*,
　2008 WL 4222045 (C.D. Cal. July 17, 2008)...................................11

*Preminger v. Principi*,
　422 F.3d 815 (9th Cir. 2005) ......................................................4, 18

*Puente Arizona v. Arpaio*,
　821 F.3d 1098 (9th Cir. 2016) ...........................................................7

*Roland Mach. Co. v. Dresser Indus., Inc.*,
　749 F.2d 380 (7th Cir. 1984) .............................................................6

*Save Our Sonoran, Inc. v. Flowers*,
　408 F.3d 1113, 1126 (9th Cir. 2005) .................................................7

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*,
　　586 F.3d 500 (7th Cir. 2009) ...............................................................10

*Skydive Arizona, Inc. v. Quattrocchi*,
　　673 F.3d 1105 (9th Cir. 2012) .....................................................10, 16

*Southland Sod Farms v. Stover Seed Co.*,
　　108 F.3d 1134 (9th Cir. 1997) .............................................................11

*Terrell v. Contra Costa Cnty.*,
　　232 F. App'x 626 (9th Cir. 2007) .......................................................15

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
　　497 F.3d 144 (2d Cir. 2007) ...............................................................13

*Tracy Anderson Mind & Body, LLC v. Roup*,
　　2022 WL 17670418 (C.D. Cal. Dec. 12, 2022)................................16

*Univ. Texas v. Camenisch*,
　　451 U.S. 390 (1981)..............................................................................10

*Virginian Ry. Co. v. United States*,
　　272 U.S. 658 (1926) ................................................................................3

## INTRODUCTION

Appellants Joneca, LLC and The Joneca Corporation's (together, "Joneca") Emergency Motion should be denied because Joneca plainly fails to satisfy the standard for extraordinary relief. Its assertions of irreparable harm are conclusory and supported by evidence addressing a more severe remedy than the court ordered. Joneca misstates the Lanham Act's legal standards, precluding even a substantial case for relief. Its merits arguments attack amply supported fact-finding that was not illogical or implausible, so it cannot succeed in showing clear error or "abuse of discretion." The public interest is not served by perpetuating deception, and without a level playing field, ISE will continue to be irreparably harmed. The decision below was sound and, on this Court's "limited and deferential review," will not be overturned. *Doe v. Horne*, 115 F.4th 1083, 1091 (9th Cir. 2024).

First, Joneca's Motion should be denied because the "*irreparable* harms" it asserts are unsubstantiated, and any harms are secured by a $500,000 bond. It raises the specter of business-ending consequences, but offers no real evidence for it. Indeed, its *sole support* for that dire potential consists of two conclusory paragraphs of the E. Chavez Declaration (Ex. B ¶¶ 19-20),[1] whose descriptions of harm concern a remedy, *recalling products from shelves*, that the court did not order. Joneca

---

[1] Lettered Exhibits refer to Joneca's; Numbered Exhibits refer to ISE's, submitted with this brief. Page numbers refer to PDF pagination unless otherwise noted.

similarly argues that it will lose goodwill and sales, justified solely by the same no-longer-applicable Declaration paragraphs. And it points to the monetary expenses it expects to incur—but the court determined, in its considerable discretion, that a $500,000 bond sufficed.

Joneca's Motion must also be denied because it repeatedly misstates the applicable Lanham Act law. From incontestably incorrect premises, it contrives "legal" errors that, in substance, amount to the same underlying assertion: its claims could not be literally false because they are *ambiguous*. *See* Mot. 2, 8, 12. Not so. As Joneca concedes, ambiguity is a factual finding. Mot. at 12 (asserting "evidence showed" ambiguity). To be "ambiguous," there must be a "reasonable" alternative meaning of "horsepower" as used in Joneca's advertisements. InSinkErator, LLC (ISE) proved that the definition of "horsepower" is motor *output—i.e.*, the power to grind food—as expert testimony and authoritative sources agreed. *See, e.g.*, Ex. 1 (Eisenstadt Decl.) ¶¶ 15-25 & Decl. Exs. C-H. This is reflected on websites and in stores *currently selling* Joneca's products, which clearly describe disposal "horsepower" as motor output and grinding ability. *E.g.*, Ex. 4 at 3; Ex. 5 at 5; Ex. 6 at 2; Ex. 7 at 3. By that standard, Joneca's packaging is plainly false.

Joneca nonetheless insists that its "horsepower" claims are true because "UL 430" (Ex. D), a safety standard for garbage disposals and their internal electrical components, refers, in one of many sections, to a "horsepower rating" based on the

wattage input—*i.e.*, the electricity coming out of the wall, not the disposal's motor output. The district court rightly rejected, *as a matter of fact*, Joneca's attempt to manufacture a "reasonable" interpretation based on a facially inapposite industry guide to electrical safety. Joneca's arguments will not show "clear error" in its assessment of the evidence.

Joneca's remaining arguments are meritless. It attempts to impose an erroneously heightened "materiality" standard fail, and it can show neither implausibility or illogic in the court's factual findings that falsehoods about a garbage disposal's horsepower are material and that ISE will suffer irreparable harm from them absent an injunction. Nor do the equities favor Joneca: it faces no harms other than those of its own making, and the public has an axiomatic interest in not being deceived. The court relied on ample evidence and applied common sense to conclude that ISE carried its burden. In sum, Joneca's showing does not merit emergency, extraordinary relief; the court below did not abuse its discretion; and there is no other basis to disturb its decision.

## STANDARD OF REVIEW

A stay pending appeal is "not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

The Court considers "(1) whether the [] applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [t]he applicant will be irreparably injured absent a stay; (3) whether…the stay will substantially injure the other parties"; and "(4) where the public interest lies." *Id.* at 434.

"[T]he required degree of irreparable harm increases as the probability of success decreases." *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023). Conversely, where the "showing of irreparable harm is weak at best," a party must make a "commensurately *strong showing* of a likelihood of success." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020) (emphasis added). But "[e]ven with a high degree of irreparable injury," a movant "must show 'serious legal questions' going to the merits." *Kolc*, 65 F.4th at 1041. This means a "reasonable probability" or "fair prospect" of success; "serious legal questions are raised"; or "a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011) (cleaned up). Moreover, this Court "may affirm a decision by the district court on any ground supported by the record, even if the district court's reasoning differs from" this Court's. *Preminger v. Principi*, 422 F.3d 815, 820 (9th Cir. 2005).

## ARGUMENT

**I.    Joneca's Baseless Claims of "Irreparable Harm" Cannot Justify a Stay.**

Joneca is not just seeking a stay—it is seeking a stay on an *emergency basis*. Yet its Motion treats the required showing of "irreparable harm" as an afterthought.

*See* Mot. 18-19. "The key word…is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended…are not enough." *Al Otro Lado*, 952 F.3d at 1008. Joneca fails to satisfy the standard.

Joneca primarily invokes the threat of going "out of business," Mot. 1, 18, but there is no factual support for that assertion. While Joneca cites an (unauthorized) Supplemental Brief (Ex. J) for the costs of stickering, its case for business-ending consequences relies *solely* on two conclusory paragraphs in the December 16 Declaration of its founder (Ex. B ¶¶ 19-20). But those concern a *possible* injunction that would require it to *remove all products* from shelves and return them to the factory, not the Order's contemplated remedy of stickering products *on shelves* or *in the field*. *Compare id.* ("Joneca would be forced to collect and remove products from over 7,000 individual stores nationwide"), *with* Order at 18 (requiring only "disclaimer[s]"); *see also* Ex. 3 (Hearing Tr.) at 22:14-23:2, 27:11-15 (court and counsel discussing stickering in the field). Indeed, stickering was the less-disruptive relief *Joneca requested* in its Supplemental Declaration. *See* Ex. J.[2]

The only *facts* cited in the Motion are Joneca's flat assertions of estimated stickering costs, but it has not provided any evidentiary basis (*e.g.*, cashflow,

---

[2] The J. Chavez Declaration similarly claims that the "irreparable harm" arises from being "forced to collect and remove [products] from stores." Ex. H ¶ 33. The Supplemental Declaration refers in passing to "immediate and significant harm" (Joneca does not cite this in its Motion) but conspicuously *omits* assertions of business-ending harm. *See* Ex. J ¶ 2.

solvency, annual revenues or profits) to demonstrate that this expense would be ruinous to its business. Nor has it shown how stickering, as opposed to a recall that was never ordered, will cause "loss of sales" or "loss of contracts." Mot. 19 (citing Ex. B ¶¶ 19-20). Conclusory assertions based on a remedy the court did not order cannot satisfy Joneca's showing. *See Al Otro Lado*, 952 F.3d at 1010.

Second, Joneca has shown no "irreparable" harm to reputation or goodwill that could not be remedied by a final judgment in its favor. *See Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387 (7th Cir. 1984). Its assertion is based on the same conclusory Chavez Declaration paragraphs that concern the consequences of *recalling products*. *See* Mot. 19 (citing Ex. B ¶¶ 19-20). Nor does Joneca explain *how* or *why* it will lose goodwill. After all, it maintains that its claims are literally true and justified by UL 430's reference to "horsepower ratings." *See* Mot. 3-4. The remedy merely requires a sticker conveying "the truth, as Joneca has described it." Order at 16. The truth is "not a hardship," and Joneca is "free to explain [its position at] retailer bids and sales presentations." *Id.* at 15-16.

That leaves the amount of the bond. *See* Mot. 19. Joneca argues the $500,000 bond is too low and the court had no "evidence contradicting Joneca's estimated costs." Mot. 19. The amount of a bond, however, is well within the district court's discretion. *See* Fed. R. Civ. P. 65(c) ("an amount that the court considers proper"). Courts, in their discretion, routinely set bonds for less than requested. *See, e.g.*,

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000). The court was not *bound* to accept Joneca's evidence or order the bond amount it sought. *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). It was free to accord evidence the weight it judged that it deserved. *See, e.g.*, *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978). Joneca fails to substantiate any "irreparable" harms and its Motion may be denied on that basis alone.

## II.    Joneca Will Fail on the Merits to Show an Abuse of Discretion.

"Preliminary injunctive relief is subject to limited review on appeal." *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016) (cleaned up). This Court may reverse "only if [the court below] abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1211–12 (9th Cir. 2019) (cleaned up). "Clearly erroneous" means "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (quotation marks omitted). If the "court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case." *Horne*, 115 F.4th at 1099 (cleaned up). Notably, Joneca never cites this standard, even though it is the one under which it must eventually succeed on the merits.

Under no standard of review can Joneca justify a stay. It cannot make a *strong showing* that it is *likely* to prove the court *abused its discretion* in deeming an injunction warranted on this record. *See, e.g., Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020). Even if Joneca could show a high degree of irreparable harm, it must still make a "substantial case for relief." *Leiva-Perez*, 640 F.3d at 967–68. Its "case for relief" fails because it is based on erroneous statements of law and disagreements with well-supported factual findings.

### A.    Joneca Misstates the Law and Cannot Show "Likelihood of Success" or "Raise Questions" Based on Incorrect Standards.

Joneca necessarily cannot show likelihood of success or "serious questions" on the merits because its argument relies upon misstatements of Lanham Act law. Because these are central premises of its case for relief, *e.g.*, Mot. 7-8, 10-12, the Motion should be denied.

First, Joneca asserts that "[l]iteral falsity may be found **only where** the ***evidence shows*** that there is a 'completely unsubstantiated advertising claim by the defendant,'" Mot. at 7 (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 590 (3d Cir. 2002) (emphasis added), and faults the district court for not applying that "standard." Mot. 8.[3]

---

[3] "Because Defendants did not raise th[e] argument before the district court, [this Court] [should] not consider it." *OpenAI, Inc. v. Open A.I., Inc.*, No. 24-1963, 2024 WL 4763687, at *1 n.1 (9th Cir. Nov. 13, 2024).

Joneca's sweeping assertion is false. While the Third Circuit held in *Novartis* that "a court *may* find that a completely unsubstantiated advertising claim by the defendant is *per se* false *without additional evidence* from the plaintiff to that effect," *Novartis*, 290 F.3d at 590 (emphasis added); *see Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 203 (3d Cir. 2014), it hardly *restricted* literal falsity to that narrow theory. There is no basis to assert that "[c]ompletely unsubstantiated" is the universal standard for literal falsity because it is not. Here, ISE did not argue that the claim was completely unsubstantiated and seek relief without additional evidence. It *proved* that the "horsepower" claims were literally false with abundant evidence showing they are untrue because Joneca's products yield *far* less than the claimed output horsepower. *See* Ex. 2 (Zamecnik Decl.) ¶¶ 10–37; Ex. 1 ¶¶ 32-51.

Second, Joneca is incorrect to assert that "where there is conflicting evidence regarding the falsity of the claim, ***there can be no literal falsity***." Mot. 9 (emphasis added). The two cases Joneca cites stand only for the proposition that, as part of a court's exercise of discretion, it may deny a preliminary injunction if it finds that factual issues are genuinely disputed. *E.g.*, *Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545, 2008 WL 5427601, at *4 (S.D. Cal. Dec. 30, 2008). In its discretion, the court here found there was no such factual dispute sufficient to warrant postponing relief until ISE proves its case on the merits.

Third, Joneca states that any literal "falsehood *must be* 'bald-faced, egregious, undeniable, [and] over the top'" to be actionable. Mot. 7 (emphasis added). But the source of that phrase, *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009), has no analogue in this Circuit; that language has, to ISE's knowledge, never been quoted in cases reported in the Ninth Circuit; and it is *dicta* in any event. The relevant standard for literal falsity here is that a statement is unambiguous and untrue. *See* Order at 6.

Finally, Joneca cites *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012), a summary-judgment decision, as holding this Court "*requires proof* of materiality '*through consumer surveys*' or other '*direct evidence* that [the challenged] statements were likely to influence consumers' purchasing decisions.'" Mot. 13 (quoting, *inter alia*, *Skydive Arizona*, 673 F.3d at 1110). Not so. The case held that survey evidence is not required to prove materiality, and that the court below had not erred in finding a "declaration constituted direct evidence" of materiality. *Skydive Arizona*, 673 F.3d at 1111. It did not hold "direct evidence" was *necessary*, let alone at the preliminary injunction stage. Nor was it legal error to invoke the "inherent quality or characteristic" test, *contra* Mot. 13-14, which well-suits the nature of preliminary injunction proceedings, *cf. Univ. Texas v. Camenisch*, 451 U.S. 390, 395 (1981), and has long been applied by courts around the country—including, in this Circuit, since at least 2008. *See POM Wonderful LLC v. Purely*

10

*Juice, Inc.*, No. CV-07-02633, 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008), *aff'd*, 362 F. App'x 577 (9th Cir. 2009). Joneca identifies no contrary controlling authority—and does not dispute that the "inherent quality or characteristic" test is satisfied here.

### B.     Joneca's Falsity Arguments are Quarrels with Factual Findings for Which it Cannot Prove "Clear Error."

The "legal" errors Joneca identifies are, in reality, disagreements with how the district court weighed and assessed evidence. Literal falsity is a question of fact. *E.g., Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (overturning summary judgment, allowing jury to decide literal falsity). Joneca urges this Court to "reach a different result [when] appl[ying] the [correct] law to the facts," *Horne*, 115 F.4th at 1099—precisely what this Court forbids.

### 1.     ISE's Evidence Persuaded the Court; Joneca's Did Not.

Joneca declares that the district court was *wrong* to invoke "its own common sense and logic" in evaluating the message Joneca is conveying. Order at 8 (quoting *Edmiston v. Jordan*, No. 98 Civ. 3928, 1999 WL 1072492, at *9 (S.D.N.Y. Nov. 24, 1999)). Demanding this Court disregard common sense and logic, and to hold that it was *error* to apply it, is a tall order. Joneca offers no authority to support its request. Experience, common sense, and logic are the core of judgment and discretion— qualities on which lower courts are due deference. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (court may "draw on its judicial experience and common sense" in

dismissing claims as a matter of law). The court properly *applied* its common sense *to the abundant evidence* to guide its decision.

That evidence showed, among other things, that "horsepower" is a concept originally invented to compare the output of horses to the output of steam engines or motors. *See* Ex. 1 ¶ 23. This understanding that horsepower refers to output remains the *consensus*, as the record established. ISE provided multiple expert declarations, textbook definitions, uncontroverted statements on retailer websites, retailer shelf displays, and other promotional materials—all of which demonstrated that *motor output* is the meaning of "horsepower." *See, e.g.*, Order at 7-8, 10; Ex. 4 at 3 (retailer website: for disposals, "horsepower" is "total power output capability from the included motor"); Ex. 5 at 5 (retailer website: for disposals, "[t]he higher the HP…[f]ood waste will be ground into finer particles and you'll have fewer jams"); Ex. 6 at 2, (retailer website: "[g]arbage disposal horsepower (HP) determines what the disposal is capable of grinding"); Ex. 7 at 3 (retailer website: "motor is measured in horsepower…[and] the greater the Hp the more powerful the garbage disposer is…for example a 3/4Hp and 1Hp will be more powerful so they can grind up a larger volume of food").

Critically, Joneca's only defense was a *single* alternative interpretation of "horsepower" drawn from a single industry *electrical safety standard*. The court rejected Joneca's alternative interpretation of its packaging's "horsepower" claims

as unreasonable. Order at 7-9, n.2. As discussed below, Joneca cannot show clear error in that conclusion.

### 2. There is no Likelihood or "Serious Question" that UL 430 Provides a *Reasonable* Alternative Meaning.

Joneca does not dispute that its claims are literally false in reference to the *output horsepower* of their motors (*i.e.*, how websites and stores selling their products describe it). Instead, the thrust of its argument is that its false horsepower claims are ambiguous. *See* Mot. 7-8. The argument fails. An ambiguous message is one that is "susceptible to more than one *reasonable* interpretation." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (emphasis added); *see also Clorox Co. Puerto Rico v. Proctor & Gamble Co.*, 228 F.3d 24, 34-35 (1st Cir. 2000) (message may be "so balanced between several plausible meanings" that it cannot support literal falsity). The district court correctly found this was not such a case.

The *only* alternative definition of "horsepower" Joneca offers is inapposite: "input horsepower," which it tries to justify with UL 430. Although courts "'may [] look to objective industry standards" in assessing falsity,'" Mot. 8 (quoting *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762, 2014 WL 572290, at *5 (N.D. Cal. Feb. 11, 2014)), the mere existence of *some* standard mentioning the product is not dispositive. The standard must fit the claim that is made: here, for example, a safety standard governing wall-socket wattage safety does not fit a claim

13

about horsepower made to retailers and consumers. The court thus properly found UL 430 did not provide a reasonable alternative interpretation of "horsepower" to consumers and retailers encountering Joneca's packaging. Joneca's arguments to the contrary fail.[4]

Joneca first critiques the district court for citing a "general consensus among engineers" in support of its ruling. Mot. 10 (citing Order at 18-19). But it misunderstands the court's reasoning. The court concluded that ISE adequately showed *this definition* of horsepower *also* applied in the context of commercial sales of garbage disposals. Concrete evidence firmly corroborates that finding. Joneca failed to provide a reasonable alternative definition. Order at 9 n.2.

Joneca then rehashes a series of disagreements with the court's assessment and weighing of the evidence. None shows a likelihood of clear error. It first argues that the court "misinterpreted" UL 430 in deeming it an industry safety standard that does not support a reasonable alternative meaning in the commercial context. Mot. 9. Joneca's basis for finding error: UL 430 does not say it *can't* be used that way. *Id.* What UL 430 *does* say, though, is that its measurements are made without regard to "any horsepower rating…marked on the…disposer or motor," in its "literature," or

---

[4] Joneca makes a number of unsubstantiated claims about UL 430. For example, it asserts that "other *manufacturers*" or "other major *competitors*" "use the UL standard for measuring horsepower." *See* Mot. 5, 9 (emphasis added). The Declarations it cites refer, without elaboration, to a *single company*, "Anaheim Manufacturing, which was acquired by Moen in 2014"—eleven years ago.

on "the packaging." Ex. D ¶ 16.4. The court found that this language confirmed that UL 430 is inapplicable to measuring horsepower for garbage disposal advertising claims. Joneca says this is wrong, offering a competing reading. Mot. 10-11. But the court's reading is logical and plausible, bolstered by expert explanation of UL 430 and its irrelevance to horsepower sales claims. *See* Order at 7-8; Ex. 8 (Eisenstadt Reb. Decl.) ¶¶ 5-28. Joneca cannot show clear error.

Joneca also faults the district court for considering evidence from a UL engineer who confirmed in writing that UL 430 is a safety standard and does not govern advertising claims, insisting the court should have given it "less credence" because it was hearsay. Mot. 11. (ISE contests that it is inadmissible. *See* Fed. R. Evid. 807.) But the court was obviously not *prohibited* from considering it, *see, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009), and evidentiary assessments in a preliminary injunction posture are core to a court's discretion, *see Bracco*, 462 F. Supp. at 442 n.3. There was no clear error in relying on it.[5] Moreover, regardless of the court's observation it was "perhaps most persuasive[]," Order at 8, ISE introduced, and the court relied on, a wealth of other evidence showing that UL 430 does not provide a measure of garbage disposal "horsepower," as Joneca claims,

---

[5] Joneca protests it did not have an opportunity to respond. But the court considered the objection and dismissed it. Ex. 3 at 18:10-13. Among other things, the documents were proper rebuttal evidence to Joneca's invocation of UL 430. *See, e.g.*, Dist. Ct. Dkt. No. 58; *Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629 (9th Cir. 2007).

*see* Ex. 6 ¶¶ 5-28; Ex. 9 (Zamecnik Reb. Decl.) ¶¶ 4-7; Ex. E ¶¶ 6-10; Ex. F ¶¶ 7-13, and Joneca "points to no other authority suggesting that input power is the proper interpretation for labeling horsepower," Order at 8.

Finally, Joneca contends that, when looking at abundant real-world evidence of how "horsepower" is used, *see* Order at 2, 10-11, the court "ignored" the claim "in its full context." Mot. 12. By this, Joneca means a subsection of UL 430 referring to "horsepower ratings." But that is not what "context" means under the Lanham Act. It refers to "the full context of the advertising or promotional materials," *Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735, 2022 WL 17670418, at *4 (C.D. Cal. Dec. 12, 2022)—what surrounds the message in commercial reality. It does not mean a detailed non-consumer-facing industrial safety standard nowhere provided on, in, or around Joneca's packaging or advertisements.

Joneca can show no abuse of discretion in the district court's thoughtful, considered conclusion that ISE carried its burden to prove a preliminary injunction was warranted. Accordingly, its Motion must be denied.

### C.     Joneca Shows no Likely Error in the Finding of Materiality.

As discussed above, Joneca improperly magnifies an observation in *Skydive Arizona* about what *could* constitute "direct evidence" into a *mandatory requirement* at the preliminary-injunction stage, declaring that every Ninth Circuit district court invoking the "inherent quality or characteristic" test since then committed reversible

16

legal error *so clear* it would warrant a stay pending appeal. But Joneca's authorities fail to make a "strong showing" of likely success or even raise "serious questions."

Joneca's position on materiality immediately shows its unreasonableness. It attacks the court for considering and relying on *voluminous* evidence that "horsepower" was a key attribute on which consumers distinguish garbage disposals. *See* Order at 9-11. Apart from denying the obvious by invoking an erroneous legal standard, Joneca has little to offer. ISE provided sworn testimony describing its independent market research (which *is* direct evidence), which consistently shows horsepower as a top purchasing consideration. Ex. I ¶ 23. Joneca faults the court for crediting "hearsay," but fails to show *clear error* in relying on it at this stage. Mot. 14; *see Bracco*, 462 F. Supp. at 442 n.3; *Camenisch*, 451 U.S. at 395.[6]

Joneca dismisses as irrelevant the retailer websites, store shelves, and descriptions of horsepower on consumer-facing webpages (all of which make clear that horsepower output is an important driver of consumer choice) solely because they do "not reflect any actual consumer purchasing decisions." Mot. 14. This is not the law. But even assuming the "material quality or characteristic" test did not apply, the court properly concluded that copious evidence of "consumer and retailer

---

[6] Joneca's position is particularly unreasonable given its insistence that it provided the "only evidence of actual consumer decision[s]"—a series of vague, unauthenticated, hearsay blurbs that do not even mention "horsepower." Mot. 14.

experience" (including ISE's market research), along with "common sense," supported materiality. Order at 10-11. There was no clear error in that conclusion.

Finally, according to Joneca, because the law refers to a requirement that the "*deception* [be] material," Mot. 13, 15, ISE was required to produce evidence showing that consumers *would not* purchase Joneca's products if they knew the undisclosed fact that it was advertising "input" horsepower. Mot. 15. This is wrong. "The deception" being material means only that the defendant's *falsehoods* (the false horsepower claims) are likely to influence purchasing decisions. As the district court correctly found, they are.

### D.    Joneca Shows no Likely Error in the Finding of Irreparable Harm.

As Joneca concedes, the Lanham Act provides a rebuttable presumption that ISE is irreparably harmed. Mot. 15-16 (citing 15 U.S.C. § 1116(a)). Although the district court did not apply that presumption—and this Court may apply it to affirm, *see Preminger*, 422 at 820—the court nonetheless found that ISE had shown irreparable harm through sworn Declarations and exhibits. *See* Order at 12-14. This was not clear error. Joneca's conclusory counternarrative of its products' superiority and its *beliefs* about ISE's business cannot rebut ISE's presumptive and proven harm from the false representations of the same horsepower at lower prices. *Contra* Mot. 16-17. Joneca offers two arguments, neither likely to succeed.

18

First, it contends that the court erred by considering "evidence of one 'retailer that chose to award more space to Joneca over'" ISE because it is "past harm" that an injunction would not remedy. Mot. 16 (citing Order at 14). This is obviously wrong. The court relied on evidence *of past harm* as probative of the *likelihood of future harm*—the finding on which the court *actually* based the injunction. Order at 14; *see Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1173 (9th Cir. 2011) ("[p]ast harms can tend to show the threat of a repeated injury"); Ex. I ¶¶ 41-43.

Second, Joneca contends that any "irreparable harms" to ISE were "speculation." Mot. 17. This, too, is wrong. Consider *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013), cited by Joneca: there, the *court*'s "analysis of irreparable harm [was] cursory and conclusory, rather than being grounded in any evidence or showing." *Id.* at 1250. Not so here. *See* Order at 13-14. "Speculation" is not the same thing as a party's opinion that certain evidence should have been credited less or not at all.

In addition to substantial evidence of price erosion and competitive harm (which this Court may credit on appeal), ISE provided sworn testimony that Joneca's false claims were threatening imminent harm in bidding processes with major retailers, including a major retailer for which bidding is underway. *See* Order at 14; Ex. I ¶¶ 44. Joneca calls this "speculation" because ISE did not name the retailer. Mot. 17. But the court dismissed that argument, finding the evidence sufficiently

detailed to establish the existence of that retailer and the irreparable injury Joneca's continued falsehoods would cause. This finding is firmly grounded in the record, and certainly not illogical or implausible.

## III. The Remaining Factors Favor ISE, and the Stay Should be Denied.

Joneca has failed to make a showing of likely irreparable harm and likely success, so it cannot rely on lopsided equities to justify a stay; it cites only the same plainly inadequate evidence of unsubstantiated business-ending injury. Meanwhile, as the court found, Joneca's falsehoods continue irreparably harming ISE.

Joneca contends that its claims are based on the "prevailing standard used throughout the industry." Mot. at 19. A prevailing *safety* standard, however, is not an "authority suggesting that input power is the proper interpretation for labeling horsepower." Order at 8. Ultimately, the harm to Joneca is Joneca's responsibility. If its "horsepower ratings" have "remained unchanged for 19 years," Mot. 20, that only underscores the extent to which false claims were core to building its business. And the "most basic public interest" in Lanham Act law is "prevention of confusion" in service of "the public interest in truth and accuracy." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004). Here, the injunction informs purchasers of the undisputed truth: that Joneca's claims are not based on *output* power.

## CONCLUSION

Joneca's Emergency Motion for Stay Pending Appeal should be denied.

Date: January 21, 2025

David Halberstadter
Asena Baran
KATTEN MUCHIN ROSENMAN LLP
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-3012
Tel.: (310) 788-4400
Fax: (310) 788-4471
david.halberstadter@katten.com
asena.baran@katten.com

Julia L. Mazur
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe St.
Chicago, IL 60661-3693
Tel.: (312) 902-5200
Fax: (312) 902-1061
julia.mazur@katten.com

Respectfully submitted,

/s/ *Timothy H. Gray*
Christopher A. Cole
Michael R. Justus
Timothy H. Gray
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave. NW, Ste. 800
Washington, DC 20006-3404
Tel.: (202) 625-3500
Fax: (202) 298-7570
chris.cole@katten.com
michael.justus@katten.com
timothy.gray@katten.com

*Counsel for Appellee InSinkErator, LLC*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Ninth Circuit Rule 27-1 because it contains no more than 20 pages and includes not more than 5,200 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 27 and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word for Office 365 in Times New Roman 14-point font.

Date: January 21, 2025                    Respectfully submitted,

                                          /s/ *Timothy H. Gray*

**INDEX OF EXHIBITS**

| Exhibit | Document Location and Name |
|---------|----------------------------|
| 1 | Dkt. No. 28: Declaration of William R. Eisenstadt, Ph.D., in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction and Exs. C–H to the Declaration |
| 2 | Dkt. No. 27: Declaration of Christopher Zamencik in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |
| 3 | Reporter's Certified Transcript of Proceedings on January 6, 2025 |
| 4 | Dkt. No. 24-3: Exhibit C to the Declaration of Daria A. DeLizio in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |
| 5 | Dkt. No. 24-4: Exhibit D to the Declaration of Daria A. DeLizio in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |
| 6 | Dkt. Nos. 23-5, 23-6: Exhibits E and F to the Declaration of Rebecca Marie Eubanks in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |
| 7 | Dkt. No. 24-15: Exhibit O to the Declaration of Daria A. DeLizio in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |
| 8 | Dkt. No. 47-1: Rebuttal Declaration of William R. Eisenstadt, Ph.D., in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |
| 9 | Dkt. No. 47-3: Rebuttal Declaration of Christopher Zamencik in Support of Plaintiff InSinkErator LLC's Motion for Preliminary Injunction |

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 25-286

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellee InSinkErator, LLC's Opposition to Appellants' Emergency Motion for Stay

**Signature** | s/ Timothy H. Gray | **Date** | 1/21/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                            *Rev. 12/01/2018*